IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SONY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-00288-SLR |
| | ) | |
| PACE PLC and PACE AMERICAS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I. INTRODUCTION**

Presently before the court in this patent infringement action is defendant Pace plc's ("Pace") motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (D.I. 15) For the following reasons, I recommend that the court deny Pace's motion to dismiss without prejudice and permit limited jurisdictional discovery.

**II. BACKGROUND**

Plaintiff Sony Corporation ("Sony") filed this action on April 1, 2015 against Pace and its subsidiary, Pace Americas, LLC ("Pace Americas"), asserting causes of action for the alleged infringement of six patents owned by Sony.[1] (D.I. 1) Sony is a corporation organized and existing under the laws of Japan with offices in Tokyo, Japan. (*Id.* at ¶ 1) Pace is a corporation organized and existing under the laws of the United Kingdom with a principal place of business in West Yorkshire, England. (D.I. 1 at ¶ 2; D.I. 18 at ¶ 4) Pace Americas is a Delaware limited

---

[1] The patents-in-suit include United States Patent Nos. 6,084,643 ("the '643 patent"), 6,467,093 ("the '093 patent"), 8,032,919 ("the '919 patent"), 6,097,676 ("the '676 patent"), 7,733,295 ("the '295 patent"), and United States Reissued Patent No. RE38,898 ("the '898 patent").

liability company with a principal place of business in Boca Raton, Florida. (D.I. 1 at ¶ 3; D.I. 18 at ¶ 5)

The complaint alleges that Pace and Pace Americas have infringed the patents-in-suit by manufacturing, importing, offering for sale, and selling digital cable and satellite television set-top box model numbers HR 34-700 and RNG-200N (the "Accused Products") to distributors including cable and satellite service providers, who resell or otherwise provide the set-top boxes to consumers throughout the United States. (D.I. 1 at ¶ 4) It is undisputed that Pace designs the Accused Products, which are manufactured by third parties outside of the United States and then shipped to ports outside of Delaware by Pace Americas. (D.I. 18 at ¶ 6) When the Accused Products reach the United States, Pace transfers title to the Accused Products to Pace Americas outside of Delaware. (*Id.* at ¶ 7) Pace Americas then sells the Accused Products to cable operators and distributors. (*Id.* at ¶ 9)

Per Pace's annual report, Pace Americas is Pace's highest revenue-producing business unit, accounting for approximately 60% of total revenue, or $1.5 billion, in 2014. (D.I. 21, Ex. 1 at 2) Pace is a major supplier of consumer electronic television equipment to both DirecTV and Comcast, leaders in the U.S. satellite and cable television markets, respectively. (*Id.* at 14) DirecTV provides pay TV service to over 20 million satellite service subscribers in the United States. (D.I. 21, Ex. 2 at 3) A January 7, 2013, Pace press release discussed DirecTV's "successful deployment of Pace manufactured HR34 Genie server . . . throughout the United States in 2012." (D.I. 21, Ex. 3 at 1) Pace is also one of a "limited number" of suppliers who provide Comcast with set-top boxes. (D.I. 21, Ex. 7 at 7) Comcast offers cable TV service to customers throughout Delaware and maintains service centers in New Castle, Dover, Lewes, and Seaford, DE. (D.I. 21, Ex. 4; D.I. 21, Ex. 6)

## III. LEGAL STANDARD

Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

To establish personal jurisdiction, a plaintiff must demonstrate facts sufficient to satisfy both a statutory and a constitutional requirement. With respect to the statutory analysis, the court analyzes the long-arm statute of the state in which the court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Next, the court must determine whether exercising jurisdiction over the moving defendant in this state comports with the due process clause of the United States Constitution. *See id.*; *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (noting that the court must apply the law of the Federal Circuit to the constitutional inquiry in patent cases).

Pursuant to the relevant portions of Delaware's long-arm statute, 10 *Del. C.* § 3104(c)(1)-(4), a court may exercise personal jurisdiction over a defendant when the defendant or its agent:

> (1) Transacts any business or performs any character of work or service in the State;

      (2) Contracts to supply services or things in this State;
      (3) Causes tortious injury in the State by an act or omission in this State;
      (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 *Del. C.* § 3104(c)(1)-(4). With the exception of subsection (c)(4), the long-arm statute requires a showing of specific jurisdiction. *See Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354-55 (D. Del. 2008). Subsection (c)(4) confers general jurisdiction, which requires a great number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991).

    If a defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process by determining whether the plaintiff has demonstrated that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). For the court to exercise specific personal jurisdiction consistent with due process, a plaintiff's cause of action must have arisen from the defendant's activities in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The court may exercise general personal jurisdiction consistent with due process if the plaintiff's cause of action is unrelated to the defendant's activities in the forum state, so long as the defendant has "continuous and systematic contacts with the forum state." *Applied Biosystems, Inc.*, 772 F. Supp. at 1458.

IV.  **DISCUSSION**

   A. **Long-Arm Statute**

Pace contends that the court lacks personal jurisdiction under Delaware's long-arm statute because Pace is a foreign company that does not conduct business or maintain continuous and systematic contacts in Delaware. (D.I. 17 at 2-4) According to Pace, the incorporation of a subsidiary, such as Pace Americas, in Delaware is not imputed to a corporate parent for jurisdictional purposes. (Id. at 4) In response, Sony contends that personal jurisdiction exists under a "dual jurisdiction" or "stream of commerce" theory that implicates both subsections (c)(1) and (c)(4) of the Delaware long-arm statute.[2] (D.I. 20 at 5) Specifically, Sony argues that Pace Americas offers for sale the accused set-top boxes to cable and satellite service providers who Pace knew or should have known were reselling or providing those devices to customers in Delaware, demonstrating an intent to serve the United States market at large via its subsidiary. (Id.)

Sony does not allege that jurisdiction exists under any one prong of the Delaware long-arm statute, but instead claims that personal jurisdiction exists under a "dual jurisdiction" or "stream of commerce" theory,[3] which combines subsections (c)(1) and (c)(4) of the long-arm

---

[2] Subsection (c)(1) confers "specific" jurisdiction over a non-resident defendant; subsection (c)(4) confers "general" jurisdiction. *See, e.g., LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986); *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (De. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998).

[3] Courts within this district disagree as to whether the dual jurisdiction theory is supported by the Delaware long-arm statute. Several recent cases have supported application of the doctrine, noting that the Delaware Supreme Court has had opportunities to repudiate the doctrine but has failed to do so. *See Polar Electro Oy v. Suunto Oy*, C.A. No. 11-1100-GMS, 2015 WL 2248439, at *4 (D. Del. May 12, 2015); *Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 674-75 (D. Del. 2014) (citing *Boone*, 724 A.2d at 1156, *aff'd*, 707 A.2d 765 (Del. 1998); *Wright v. Am. Home Prods. Corp.*, 768 A.2d 518, 531 (Del. Super. Ct. 2000)). However, another judge has predicted that the Delaware Supreme Court would not adopt the dual jurisdiction theory, concluding that the Delaware Supreme Court's statements in *LaNuova* regarding subsections

5

statute. *See Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 672-76 (D. Del. 2014). The approach was adopted by Delaware courts as a mechanism by which to apply the long-arm statute to "stream of commerce" situations, or situations where a non-resident places its product in the market place and may, under certain circumstances, be found to have sufficient contacts with Delaware.

> [T]he enumerated activities in [subsection (4)] should be analyzed to determine whether there is an intent or purpose on the part of the [non-resident] to serve the Delaware market with its product. Likewise, when analyzing [subsection] (1) it is not important that the [non-resident] itself act in Delaware. Instead, if the intent or purpose on behalf of the [non-resident] to serve the Delaware market results in the introduction of the product to this State and plaintiff's cause of action arises from injuries caused by that product, this section is satisfied.

*Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 371-72 (D. Del. 2008). "Thus, the dual jurisdiction analysis requires a showing of both: (1) an intent to serve the Delaware market; and (2) that this intent results in the introduction of the product into the market and that plaintiff's cause of action arises from injuries caused by that product." *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267 (D. Del. 2010) (citing *Power Integrations*, 547 F. Supp. 2d at 372).

"Under the Delaware long-arm statute, the 'touchstone' of stream-of-commerce theory relates to the first prong of this analysis, the 'intent and purpose to serve the Delaware market.'" *Eastman Chem. Co. v. AlphaPet Inc.*, C.A. No. 09-971-LPS-CJB, 2011 WL 6004079, at *16 (D. Del. Nov. 4, 2011) (citing *Power Integrations*, 547 F. Supp. 2d at 372). A non-resident

---

(c)(1) and (c)(4) were mere dicta. *Round Rock Research LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969, 976-77 (D. Del. 2013). The *Round Rock* court noted that the Delaware Superior Court's adoption of the dual jurisdiction theory is inconsistent with well-established principles that the long-arm statute should be separately analyzed from due process considerations, and its interpretation should flow from the statutory language. *Id.* at 976. Because the Delaware Supreme Court has not overruled the dual jurisdiction theory, this court will proceed with the dual jurisdiction analysis.

defendant's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the defendant intended to exclude Delaware from its marketing and distribution efforts. *Power Integrations, Inc.*, 547 F. Supp. 2d at 373.

The record in the present case establishes Pace's intent to serve the Delaware market by transferring title to the Accused Products to Pace Americas, which then sells the Accused Products to national distributors. Under the relevant case authorities regarding dual jurisdiction, Pace's intent to distribute the products throughout the United States is sufficient to establish Pace's intent to serve the Delaware market specifically.[4] *See Power Integrations*, 547 F. Supp. 2d at 373; *Eastman Chem.*, 2011 WL 6004079, at *16. The parties do not dispute that Pace designs the Accused Products, which are subsequently transferred to Pace Americas as the importer of record in the United States, and sold by Pace Americas to cable operators and distributors such as Comcast and DirecTV. (D.I. 18 at ¶¶ 6-9; D.I. 21, Ex. 1 at 14) Pace has provided no evidence that it intended to exclude Delaware from its efforts to distribute the Accused Products in the United States. Thus, the first prong of the test for stream of commerce jurisdiction under the Delaware long-arm statute has been met.

---

[4] The plurality decision written by Justice Kennedy in the United States Supreme Court's decision in *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) rejected the idea that an intent to serve the United States market could demonstrate purposeful availment of the forum state. *Nicastro*, 131 S. Ct. at 2790. The Supreme Court's plurality decision concluded that "the defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have *targeted the forum*; as a general rule it is not enough that the defendant might have predicted that its goods will reach the forum state." *Id.* at 2788. However, dual jurisdiction cases in this district are distinguishable because they "d[o] not rely solely on targeting the national market to satisfy the stream-of-commerce test," and also stress the importance of establishing that the accused products are shipped to Delaware and that a relationship exists with end users of the products in Delaware. *Eastman Chem.*, 2011 WL 6004079, at *18 (citing *Power Integrations*, 547 F. Supp. 2d at 367). The District of New Jersey has stressed that "*Nicastro* does not clearly or conclusively define the breadth and scope of the stream of commerce theory, as there was not a majority consensus on a singular test." *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 513 (D.N.J. 2011).

7

However, Sony has failed to allege facts sufficient to satisfy the second prong of the analysis because there is no evidence on the record that the Accused Products were actually sold in Delaware. Although Sony indicates that DirecTV has over 20 million satellite television subscribers in the United States, and a Pace press release indicated that it sold a particular model of the accused set-top boxes to DirecTV, no evidence explicitly states that DirecTV distributed the Accused Products in Delaware. (D.I. 21, Exs. 1-3) Moreover, although Sony demonstrates that Comcast offers cable TV services in over fifty Delaware cities and towns and maintains service centers in Delaware, there is no evidence affirmatively connecting Comcast's presence in Delaware with Pace's set-top box distribution to Comcast. (*Id.*, Exs. 5-7) Sony cites no controlling precedent in which a court found that the second prong of Delaware's dual jurisdiction analysis was met absent evidence of actual sales of the products at issue within Delaware. *See Graphics Properties Holdings, Inc.*, 70 F. Supp. 3d at 662 (statutory analysis satisfied by evidence of sales in Delaware by three physical resale outlets); *Polar Electro*, 2015 WL 2248439, at *4 (statutory analysis satisfied by evidence of eight e-commerce transactions made in Delaware); *Robert Bosch LLC*, 70 F. Supp. 3d at 678-80 (stream of commerce jurisdiction over out of state manufacturer and seller found when sales were made to U.S. chain retailer with a location in Delaware, and said store sold the accused product). In this district, Judge Robinson has declined to exercise personal jurisdiction under the dual jurisdiction theory based solely on distribution agreements and contracts to service the U.S. cable market, when there was no showing that any products actually ended up in Delaware. *See Belden Techs., Inc.*, 626 F. Supp. 2d 448, 456 (D. Del. 2009) ("While it is **possible** that the accused products penetrated Delaware's market, plaintiff presents no competent evidence to substantiate this

conclusion. Therefore, because plaintiff fails to meet its burden with respect to the second prong, its argument for personal jurisdiction under the dual jurisdiction theory fails.").

### B. Due Process

Because Sony failed to satisfy the statutory basis for personal jurisdiction under the Delaware long-arm statute, the court need not reach the constitutional due process prong of the personal jurisdiction analysis. *See Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 457 (D. Del. 2009); *see also Brennerman v. Guardian News & Media Ltd.*, C.A. No. 14-188-SLR-SRF; 2015 WL 9484466, at *9 (D. Del. Dec. 29, 2015).

### C. Rule 4(k)(2)

Rule 4(k)(2) provides that, "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." The concern underlying Rule 4(k)(2) – known as the federal long-arm statute – is "with defendants escaping jurisdiction in U.S. federal courts while still having minimum contacts with the United States." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009) (emphasis added). Therefore, "[a] defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." *Id.* at 1414 (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)).

Pace has acknowledged that it is properly the subject of Florida's jurisdiction. (D.I. 23 at 9) This stipulation is sufficient to defeat Sony's Rule 4(k)(2) argument because the state of Florida is the principal place of business of Pace Americas, and the court is satisfied that Pace has continuous contacts with Florida for this reason.

9

### D. Jurisdictional Discovery

"If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the parties and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal quotations omitted). Stated another way, a court must consider whether exploration of certain discovery avenues "might provide the 'something more' needed" to establish personal jurisdiction. *Id.* Courts have found jurisdictional discovery to be "particularly appropriate where the defendant is a corporation." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).

In the present case, Sony's jurisdictional allegations regarding Pace are not clearly frivolous. Sony has pointed to Pace's business relationships with Pace Americas, Comcast, and DirecTV, and alleges contacts with Delaware through these relationships.[5] It is possible that jurisdictional discovery focused on these relationships will produce the required "something more" to establish personal jurisdiction. *See Belden Techs., Inc.*, 626 F. Supp. 2d at 459. "Through exploring these relationships, [Sony] **could** unearth transactions [or] sales" of the Accused Products in Delaware. *Id.* (emphasis in original). Allowing limited jurisdictional discovery based on Sony's specific allegations and competent evidence regarding the established distribution channel between Pace and Delaware is not authorizing a "fishing expedition based [only] upon . . . bare allegations." *See Accenture Global Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 663 (D. Del. 2008). Therefore, I recommend that the court deny

---

[5] Sony has supported its allegations with evidence including Pace's 2014 Annual Report, Comcast's 2014 Annual Form 10-K Report, and press releases from Pace's own website. (D.I. 21) The court is satisfied that these exhibits are not the type of "internet research" that has been found inadmissible "as a compilation of hearsay." *See generally Belden Techs. Inc.*, 626 F. Supp. 2d at 459 (quoting *In re Ameriserve Food Distrib. Inc.*, 267 B.R. 668, 672 (D. Del. 2001)).

without prejudice the motion to dismiss and permit Sony to conduct limited jurisdictional discovery.[6]

## V. CONCLUSION

For the foregoing reasons, I recommend that the court deny without prejudice Pace's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and grant the request for limited jurisdictional discovery. Specifically, I recommend that Sony be permitted to pursue jurisdictional discovery for the next thirty (30) days. I recommend that Pace be permitted to renew its motion to dismiss for lack of personal jurisdiction within three weeks of the close of jurisdictional discovery.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

---

[6] During oral argument held on February 10, 2016, the parties indicated a willingness to work together and reach an agreement on the limited scope of jurisdictional discovery needed in this case to resolve any outstanding jurisdictional issues. The court encourages the parties to meet and confer on the scope of discovery necessary in light of this ruling identifying deficiencies limited to the second prong of the dual jurisdiction analysis.

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 12, 2016

/s/ Sherry R. Fallon
Sherry R. Fallon
United States Magistrate Judge